Argued and submitted December 16, 1996, reversed and remanded
February 12, 1997

In the Matter of the Compensation of
Marcia P. Trevisan, Claimant.

Marcia P. TREVISAN,
*Petitioner,*

*v.*

SAIF CORPORATION
and Karnopp, Peterson, Noteboom, Hubel,
Hansen & Arnett,
*Respondents.*

(95-00290; CA A92932)

932 P2d 1202

Margaret H. Leek Leiberan argued the cause for peti-
tioner. With her on the brief was Leiberan & Gazeley.

David L. Runner argued the cause and filed the brief for
respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Claimant petitions for review of a Workers' Compensation Board (Board) order holding that a Disputed Claim Settlement (DCS) precludes her from asserting a claim for headaches. We review for errors of law and substantial evidence, ORS 656.298(6), ORS 183.482(7) and (8), and reverse and remand.

Claimant is a word processor and computer systems manager. In September 1992, she developed cervical pain and was diagnosed with degenerative joint disease; she also complained of headaches. In November 1992, claimant filed a claim for spinal stenosis related to her work as a typist. SAIF initially denied the claim but in March 1993, SAIF and claimant entered into a Stipulated Settlement Agreement (SSA) in which SAIF agreed to accept the claim for cervical stenosis and discectomies. The SSA made no reference to headaches. Claimant's headaches continued after the discectomies, and in May 1993, she began receiving treatment from Dr. Eckman for the headaches.

In 1994, claimant filed a claim for bilateral temporomandibular joint (TMJ) problems, contending that the cervical collar she wore after her second discectomy was causing TMJ. On April 21, 1994, SAIF issued a partial denial of the TMJ claim. The denial made no mention of headaches. Claimant filed a request for hearing. She continued to receive treatment for headaches.

In May 1994, claimant began receiving treatment from Dr. Altrocchi for her headaches. She informed him that she had suffered headaches for as long as she could remember and that she had had them almost daily for the past three years. She also informed Altrocchi that her mother and her sister suffered from headaches. The medication that Altrocchi prescribed was not effective.

In July 1994, claimant and SAIF entered into a settlement captioned "Disputed Claim Settlement and Partial Denial." It provides, in relevant part, that:

> "The parties agree that a bona fide dispute exists between them as to the compensability of the condition(s)

and/or services *which have been denied*. Both parties have substantial evidence to support their contentions and *each desires to settle all issues raised or raisable at this time by entering into a disputed claim settlement under the provisions of ORS 656.289(4)* for the total sum of $3,300.00." (Emphasis supplied.)

The DCS also specifies that claimant's accepted conditions— cervical stenosis and discectomy at levels C5-6 and C6-7— remain "in open status."

Meanwhile, claimant continued treatments with Altrocchi for her headaches. He referred her to a pain clinic in California. After her return from California, claimant was examined by Drs. Platt and Arbeene at SAIF's request. They were unable to relate claimant's headaches to the 1992 injury and, on December 12, 1994, SAIF issued a denial of treatment and disability related to headaches. It stated the reason for the denial was that the 1992 injury was not the major contributing cause of the headaches. Claimant requested a hearing.

The administrative law judge (ALJ) dismissed claimant's request for a hearing, and the Board affirmed. According to the Board, "the compensability of the headache condition could have been raised prior to entering into the DCS." Relying on *Good Samaritan Hospital v. Stoddard*, 126 Or App 69, 867 P2d 543, *rev den* 319 Or 572 (1994), and *Safeway Stores, Inc. v. Seney*, 124 Or App 450, 863 P2d 528 (1993), the Board concluded that the "raised or raisable" provision in the DCS precludes claimant from asserting the headache claim.

Claimant's three assignments of error reduce to the proposition that the Board erred in holding that the DCS precludes her from asserting the headache claim. She contends that the only issue resolved by the DCS was the claim for TMJ. SAIF responds that the DCS unambiguously encompasses claimant's headache condition. In the alternative, SAIF contends that the SSA bars claimant from asserting the headache claim.

ORS 656.289(4) authorizes the parties to enter into a DCS "where there is a bona fide dispute over compensability

of a claim," and the parties have agreed to "make such disposition of the claim as is considered reasonable." OAR 438-009-0010(2)(b), adopted pursuant to ORS 656.289(4), specifies that a DCS shall include a statement that "the claim has been denied and the date of the denial." ORS 656.262(9), in turn, provides that when an insurer or other agent of an employer denies a claim for compensation,

> "written notice of such denial, stating the reason for the denial, and informing the worker of the Expedited Claim Service and of hearing rights under ORS 656.283, shall be given to the claimant."

In this case, the DCS states that the denied condition is "bilateral temporomandibular joint problems." SAIF denied that condition on April 21, 1994. SAIF did not deny the headache claim until December 12, 1994, after the execution of the DCS. As a matter of law, the DCS did not settle claimant's headache claim, because the headache claim was not denied at the time that the parties entered into the DCS.[1]

■ Nonetheless, the Board held and SAIF argues that, under *Stoddard* and *Seney*, the "raised or raisable" language of the DCS precludes claimant from raising the headache claim, because the headache condition had been diagnosed and treated before the parties entered into the DCS. We disagree. *Stoddard* and *Seney* involved stipulated settlement agreements, which may resolve *any* contested matter. ORS 656.236(1). This case, by contrast, involves a DCS, which may be used only to settle denied claims. ORS 656.289(4); OAR 438-009-0010(1). At the time that the parties entered into the DCS, the only denied condition was TMJ. The "raised or raisable" language in the DCS refers only to conditions

---

[1] SAIF contends that the phrase "Partial Denial" in the caption of the DCS demonstrates that the agreement "was intended as a 'partial denial' and settlement of conditions other than the TMJ problems," and that the partial denial included in the agreement "can only refer to the headache condition and any other unaccepted conditions existing at the time of the agreement." That argument is without merit. Denial of a claim must satisfy the requirements of ORS 656.263(9). Nothing in the DCS put claimant on notice of the condition that SAIF now claims it was denying, its reason for the denial, or claimant's appeal rights in the light of the so-called denial. *See In the Matter of the Compensation of Andrew C. Justice*, No. 91-16317, 1992 WL 145769 (Or Workers' Comp Bd June 1, 1992) (example of a partial denial in a DCS that contains the statutory requirements for a denial).

associated with TMJ. SAIF did not deny the headache condition for another four months, and its denial declared that "[t]he September 10, 1992 injury is not the major contributing cause of your headaches."

■   We next consider SAIF's argument that the SSA provides an alternative basis for affirming the Board. By that agreement, SAIF rescinded its denial of claimant's neck and shoulder condition and accepted "cervical stenosis and discectomy at C5-6, C6-7." The SSA also stated that it settled "all issue(s) raised or raisable at this time * * *." According to SAIF, claimant's headache condition could have been raised at the time of the SSA because "it had been diagnosed and at least tentatively related to the neck claim," and because "claimant could have demanded that the condition be accepted pursuant to ORS 656.262(6)(b)(A)." We find those arguments unpersuasive.

The record reveals that when the parties entered into the SSA for the 1992 injury, claimant had been having headaches for over ten years and that the cause of those headaches was unknown. As SAIF acknowledges, in 1993, claimant's headaches were only "tentatively" related to her cervical condition and there were other tentative diagnoses. Based on what was known about claimant's headaches in 1993 when SAIF accepted the cervical stenosis and discectomy conditions, we cannot conclude that claimant could have demanded that the headache condition be accepted or that headaches were "raised or raisable" as part of the SSA.[2]

In sum, neither the DCS nor the SSA bars claimant from challenging SAIF's December 1994 denial of her headache condition.

Reversed and remanded.

---

[2] SAIF's December 1994 denial of the headache condition is an indication that SAIF itself did not believe that the SSA encompassed the headaches.